GENERAL COURT, MAY TERM, 1804.

MITCHELL *et al.* Lessee *vs.* GOVER.

EJECTMENT for a tract of land called *Rupalta,* lying in Harford county. The declaration contained a joint demise by the whole of the lessors for the *whole tract,* and also separate demises by each of the lessors for the *whole tract.* The defendant took defence on warrant, and plots were returned, by which it appeared that the defendant took defence for all the land located by the plaintiff as his pretensions.

1. The plaintiff produced and read in evidence, a grant of the tract of land called *Rupalta* to *Henry Stockett,* on the 27th of June 1661. The *Rent Roll* entries, shewing that *Bagby* and *Wife* on the 31st of August 1719, conveyed 150 acres. part of the said tract, to *Samuel Gover.* The *will* of *Samuel Gover,* dated the 10th of November 1743, devising two tracts of land to his sons *Samuel* and *Philip,* and the heirs

Where the plaintiff in an action of ejectment declares for *a whole tract* of land, and makes title to a *part* only, it is sufficient to locate *such part* on the plots, if there is no controversy about the location of the whole, and he may, on such partial location, read the patent in evidence. The declaration in ejectment being for a tract of land called *Rupalta,* and the title being for one called *Repalta* is no variance, if it be proved to be the same land. It seems, that where the lessors of the plaintiff in ejectment claimed as heirs at law under the act of 1786, ch 45, to direct descents, it is sufficient to count on a *joint* demise by all of them

May 1804.

Mitchell
vs
Gover.

of their body, and to the survivor   His son *Samuel* to take his choice of said tracts.   That *Samuel* elected to take the other tract, and *Philip* took *Rupalta*. The *Debt Book* entries from 1752 to 1768, shewing that 150 acres of the land called *Rupalta*, had been charged to *Philip Gover*, and that *Philip Gover* died in possession of those 150 acres. He also offered a deed of mortgage of said land from *Samuel Gover* to *James Mitchell*, the father of the lessors of the plaintiff, dated the 9th of March 1795, and further proved, that James Mitchell died in 1795, leaving the lessors of the plaintiff his heirs at law.

*Martin*, (Attorney General,) and *Hollingsworth*, for the defendant, objected to the reading the grant in evidence, because the plaintiff had brought his ejectment for the whole tract, and had only made title to 150 acres part of the tract, and had only located on the plots in the cause the part for which he had made title.   If an ejectment is brought for the whole tract, the plaintiff claiming title to a part only, he must not only locate on the plots the part he claims, but also the whole tract.   On the plots now before the court, part of a tract of land only is located, and it does not appear that it is a part of *Rupalta*.

*Key*, for the plaintiff.   The defence which the defendant has taken on the plots is an admission that the part of the tract located is a part of *Rupalta*. Where an ejectment is brought for the whole tract, there can be no doubt that less than the whole may be recovered—but more than the ejectment is brought for cannot.   The defendant, by contesting the location, might have compelled the plaintiff to locate the whole tract; not having done so, there could be no necessity for incurring an unnecessary expense by locating that which was rendered unimportant in the decision of the question between the parties.   The location therefore which the plaintiff has made must be considered correct, not having been denied by the defendant.

*Hollingsworth.* It does not appear that the land located on the plots is the land mortgaged by *Gover* to *Mitchell.* It is stated on the plots to be the land in possession of *Gover.*

*Key.* It is proved that *Gover,* after his mortgage, retained the possession of the mortgaged premises. The location is of all that part of *Rupalta* in possession of *Gover.* The defendant has taken defence for the same land, and has given no other location of it than is given by the plaintiff. The case is simply on title, and there was no occasion whatever for any location.

*Johnson,* also for the plaintiff. The object of the plots is to elucidate the subject matter in controversy. The mortgage deed is for the land without metes and bounds. If it is not the same land which is located on the plots, it is a matter of fact of which the jury are to decide. If it is not the same land, the defendant ought to have denied it. But not having denied it, he has admitted it to be the same. It is not stated that the defendant is in possession of more of the tract than the part which the plaintiff has located. Why locate the whole tract when there is no dispute about the whole? It would be enhancing expense without a necessity.

*Hollingsworth.* Neither the grant nor the deed are located on the plots. The defendant admits he is in possession of the part located. It is not a mortgage produced by the plaintiff, it is a *deed* for a *moiety* of *Rupalta.* It is admitted, that if an action of ejectment is brought for a part of a tract, a part only is necessary to be located. But if the suit is for a whole tract, then the whole must be located, and if the ejectment is for an entire tract, and title is made to a part only, then the whole tract, and the part claimed, must be located.

*Key.* We admit that there is no location of the whole tract on the plots, and that no evidence of a

MAY 1804.

Mitchell
vs.
Gover

deed can be given unless it is located. The deed offered in evidence by the plaintiff is located. It is for a moiety of the tract, and a moiety is located. We have shewn title in *Gover*, and then locate his possession. He cited *Carroll vs. Norwood*, *Ante* 100, 167.

*Martin*, (Attorney General,) in reply. If a deed cannot be given in evidence unless it is located, how can a grant be read unless it is located? The same rule prevails with respect to the location of grants as to deeds; and no grant can be read in evidence unless it be located. In the case of the ejectment for a church in Frederick town, (*Winemiller* and others,) it was necessary not only to locate the lot on which the church stood, but also the whole tract. So in case an ejectment is brought for a lot in Baltimore, the whole of *Coles Harbour* must be located, unless by agreement the location of the whole is dispensed with. But here the defendant, for aught that appears, may be in possession of the other moiety of the tract for which the ejectment is brought.

CHASE, Ch. J. The court do not recollect any case in which this question has been decided. The use of plots is to ascertain the thing in controversy—But in this case there is no question about location, as the part located by the plaintiff is admitted by the defendant. If there had been a counterlocation, then it would have been necessary for the plaintiff to locate the whole tract. The court are of opinion, that as there is no controversy about the location of the land for which the ejectment is brought, the defendant having taken defence for the land claimed by the plaintiff, it was not necessary for the plaintiff to have located the patent on the plots, although it is incumbent on the plaintiff to produce the patent in evidence to shew the land had been granted by the proprietary.

The declaration in ejectment being for a tract of land called *Rupalta*, and the title being for one called *Repalta*, is no variance if it be proved to be the same land

2. *Hollingsworth*. The grant produced is for a tract of land called *Rupalta*. The declaration is for *Rupalta*, and the deed offered in evidence is for *Repalta*. The *allegata* and *probata* not agreeing, the plaintiff cannot recover.

*Key.* In the case of *Carroll vs. Norwood, (4 Harr. & M·Hen. 287,)* the declaration was for *Enlargement,* and the patent produced was for *The Enlargement,* and it was decided to be no variance. Here the eject-ment and the deed are for a tract of land, having the same sound in the pronunciation, and there is suffici-ent evidence produced to prove it to be same land. There is a mere mistake in spelling the name. The gentleman last up entertained us the other day with a friend of his spelling the word "usage," *yowzitch,* and "Jacob," *Gikup.* Suppose, for argument sake, his friend had by deed granted to his son *Gikup,* a tract of land called *Pat Yowzitch,* and an ejectment was brought in the name of the son *Jacob* for the land call-ed *Bad Usage,* by its patented name—How would the court decide?

CHASE, Ch. J. The court are of opinion that there is no variance between the name of the land mention-ed in the grant, and that mentioned in the deed, so as to prevent the plaintiff from recovering.

3. *Hollingsworth.* It is stated that *James Mitchell* died in 1795, leaving the lessors of the plaintiff his heirs at law. The declaration states the demise in two ways, one a joint demise by all of the children, and the other a separate demise by each for the whole tract. The plaintiff cannot recover under the first demise—nor can he recover under the second. The demise should have been by each of the lessors for *one seventh.* The act of 1786, regulating descents, vests in each of the heirs one seventh part of the land, and not an estate in coparcenary.

> It seems, that where the lessors of the plaintiff in ejectment claimed as heirs at law un-der the act of 1786, ch. 45 to di-rect descents, it is sufficient to count on a *joint demise* by all of them

*Key* and *Johnson,* contra. The first count is the pro-per one under the act of 1786. Tenants in common are not known to exist by descent. Coparceners do. The first count is analogous to a demise made by coparcen-ers Although it is not in proof that the whole of the lessors are the heirs, yet sundry of them are proved to be the heirs. The others may not exist. The demise is

to a fictitious person, and he is to recover.   His lease is not invalidated, because it may happen that some one of the persons who had demised had no right.   The estate which descends to heirs under the act of 1786, is a nondescript estate.   It is not analogous to any estate in England.   It is not a joint tenancy, nor a tenancy in common.   Daughters are parceners at common law; they take by descent; and so in this case do the lessors of the plaintiff under the act of 1786.   There is no survivorship among coparceners, nor is there any under the act of 1786.   The plaintiff in this case may recover on the first count.   It is a statute parcenary, not known to the common law, but regulated by act of assembly.

*Martin*, (Attorney General,) and *Hollingsworth*, in reply.   Under the act of 1786 the descendants take the estates as heirs, *sub modo*.   They take in the same manner as tenants in common.   The act of 1786 vests a particular estate.   It is not an estate of joint tenancy, tenancy in common, or parcenary.   But it is an estate peculiar to itself.   It is not in the power of any one of the heirs to compel a partition of the estate. The act points out how the division is to be made by application to the county court, or court of chancery; and one of the heirs may take the whole estate, if it will not admit of division, by paying to the others their proportion under the valuation.   The estate has qualities similar to that of a joint tenancy, tenancy in common, and coparcenary.   It must be shewn that all the heirs have a like interest in a joint demise.   It must shew the estate declared for.

The counsel for the plaintiff moved for leave to amend, which the court granted, and the cause was continued.

It does not appear that a new declaration was filed. But the plots were amended by the plaintiffs locating the whole tract in addition to his location of the particular part he claimed.

The defendant at May term 1805, confessed a judgment for possession, and costs.